## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EVOLVE MEP, LLC, a Georgia limited liability company, | Civil Action No. _____ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| PINNACLE INFOTECH, INC., a Delaware corporation, | |
| Defendant. | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff eVolve MEP, LLC ("Evolve") files this Original Complaint against Defendant Pinnacle Infotech, Inc. ("Pinnacle" or "Defendant") and alleges as follows:

## I.    THE PARTIES

1.    Plaintiff eVolve MEP, LLC is a Georgia limited liability company having its principal place of business in Atlanta, Georgia.

2.    Defendant Pinnacle Infotech, Inc. is a Delaware corporation having a place of business at 6065 Roswell Rd. NE, Suite 625, Atlanta, Georgia 30328.  Its registered agent is Corporation Service Company, with a physical address of 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

1

3.    Defendant also has an office at 50 Sugar Creek Center Blvd, Suite 350, Sugar Land, Texas 77478.  Pinnacle's CEO is Bimal Patwari, with the Sugar Land address listed as his business address.

## II.    JURISDICTION AND VENUE

4.    This is an action for breach of contract, theft of trade secrets, copyright infringement, patent infringement, and other related claims.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    Subject matter jurisdiction over this matter is proper based upon federal question jurisdiction under 28 U.S.C. § 1331, as Evolve has brought claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, federal copyright infringement, 17 U.S.C. § 501, and patent infringement, 35 U.S.C. § 271.

6.    Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  Plaintiff Evolve is a Georgia limited liability company with its principal place of business in Atlanta, Georgia and with Evolve's members being residents of Georgia. Defendant Pinnacle is a Delaware corporation with its principal place of business in Texas and an office in Georgia.

7.    Personal jurisdiction over Defendant is proper in this Court because Defendant has sufficient minimum contacts with this state and this judicial district. Pinnacle maintains a place of business at 6065 Roswell Rd. NE, Suite 625, Atlanta, Georgia 30328, within the Northern District of Georgia. Pinnacle conducts substantial business operations in Georgia and has purposefully availed itself of the privileges and benefits of conducting business in this State.

8.    Furthermore, the wrongful acts alleged in this Complaint were directed at and caused harm to Evolve in Georgia, where Evolve maintains its principal place of business. Pinnacle's development, marketing, sale, and licensing of the infringing PiVDC plugins have caused injury to Evolve in this district.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business in this judicial district and a substantial part of the events giving rise to the claims occurred in this district.

## III.    BACKGROUND

**Evolve and Its Software**

10.    Evolve is a software development company focused on creating valuable software and services solutions for the mechanical, electrical, and plumbing ("MEP") sectors within the construction industry. In 2016, the company

3

identified a gap in the construction technology market related to MEP solutions.

11.    Since that time, Evolve has undertaken extensive capital- and time-intensive efforts to build unique and proprietary technology that has attracted diverse clientele throughout the construction and engineering industry. Companies ranging from top mechanical, electrical, and plumbing contractors, engineering and design firms, building information modelling ("BIM") service providers, to small independent construction contractors across the United States and internationally are clients of Evolve. As of the end of January 2026, Evolve has over 600 companies as clients, with payee addresses spanning 47 US states and fifteen countries.

12.    More than 95% of Evolve's recognized revenue over the last year comes from the sale of MEP software that automates the design modeling, detailing, and publishing of MEP systems. This automation requires a combination of computer science, mathematics (especially trigonometry), and embedded equations that represent hundreds of years of electrical and mechanical construction trade experience codified into functioning software. The software includes the development of proprietary 3D object files called Revit Families and Fabrication Parts (ITMs), which are designed with embedded logic equations to function directly, often natively, with the code and

application layer. Evolve's MEP software also includes significant data management capabilities that are proprietary and critical to MEP firms to push and pull data within and from their design models for use in other functional areas such as procurement, fabrication, and estimating. Evolve's MEP software ties directly to the industry's dominant authoring software platform, Autodesk Revit.

13.    Evolve has separate specific offerings for MEP trades, including Evolve Mechanical and Evolve Electrical. The capabilities of these products automate design modeling, detailing, and publishing workflows and empower team-based functions in a user-friendly design.

14.    Evolve's product suite has required years of development and tens of millions of dollars of capital investment. The company has undertaken ongoing research and development, with continued hiring and retaining of software developers and product managers to painstakingly develop its suite of products.

**Evolve's Intellectual Property Protections**

15.    Evolve protects the sensitive and proprietary nature of its technology in a number of ways. First and foremost, Evolve has successfully prosecuted and received issuance of twenty-two (22) U.S. patents related to its technology

and capabilities.  Evolve also has nine (9) pending U.S. patent applications, several of which are expected to issue as U.S. patents in the near future.

16.    In addition, Evolve has protected its source code, Revit Family ("RFA") files, and other proprietary technology as trade secrets.  Evolve ensures that all users (including clients, employees, contractors, and co-developers) are subject to legal obligations to protect Evolve's proprietary assets and to restrict when and how Evolve's products, technology, source code, and other assets can be used, accessed, or implemented by third parties.  These protections ensure not only the protection of Evolve's intellectual property, but also the security of sensitive information Evolve's customers input and work with inside Evolve's software.

17.    Evolve owns copyright registrations covering its RFA files, including: (a) Evolve Conduit Bend RFA compilation, Registration No. TX 9-541-791 (see Ex. CP01); and (b) Evolve Sleeve RFA compilation, Registration No. TX 9-543-701 (see Ex. CP02).

**Evolve's End User License Agreement**

18.    Use of the Evolve platform is subject to the company's End User License Agreement ("EULA").

19.    A true and correct copy of Evolve's EULA is attached hereto as Exhibit 3 and incorporated herein by reference.

20.    Section 6 of Evolve's EULA lists user restrictions, specifically providing that

users may not, among other things:

> (i) "license, sublicense, sell, resell, transfer, assign, distribute or
> otherwise commercially exploit or make available to any third party
> the Services in any way";

> (ii) "permit others to use the Services, except as expressly provided
> above for authorized use";

> (iii) "modify or translate the Services";

> (iv) "reverse engineer, decompile, or disassemble the Services, except
> to the extent this restriction is expressly prohibited by applicable law";

> (v) "create derivative works based on the Services";

> (vi) "merge the Services with another product";

> (vii) "copy or reproduce the Services or the Services' functionality";
> or

> (viii) "remove or obscure any data tag, proprietary rights notices or
> labels, or similar information on the Services."

21.    The EULA further provides that certain features and functions of the Services

are protected by patents owned by Evolve, and includes an itemized list of

Evolve's issued U.S. patents.  Specifically, Section 6 of the EULA also states:

"US Patent numbers owned by Evolve: 10147061, 10318661, 11544420, 10331820, 11836676, 11295043, 12019957, 10902580, 11361427, 10949577, 11550966, 11244084, 11928392, 11100257, 11087037, 11816398, 11107295, 11922592, 11030826, 11928788, 11556679, 11615356." Section 6 also states that users are expressly prohibited from "recreating or copying the patented features in any way, including but not limited to marketing any Services, product, or service that infringes any claim of any of the Patents."

22.  Section 9 of the EULA states that Evolve owns "the Services, all physical and digital copies thereof, and all intellectual property rights embodied therein, including but not limited to patent rights of the Patents, trademark rights, copyrights, trade secrets, and Confidential Information embodied in the Services' design and coding methodology."

**Pinnacle's Relationship with Evolve**

23.  Pinnacle is a construction technology company that provides Building Information Modeling ("BIM") services and software tools to the construction industry. Pinnacle is currently a licensee of Evolve's software. Pinnacle

became a licensee of Evolve Electrical in September of 2022. Pinnacle became a licensee of Evolve Mechanical in December of 2022.

24. By virtue of its license to Evolve's software, Pinnacle agreed to be bound by and was subject to the terms and restrictions of Evolve's EULA, including the prohibitions on reverse engineering, creating derivative works, and copying Evolve's software functionality.

25. Evolve's EULA put Pinnacle on notice of Evolve's patents.

26. Pinnacle currently licenses Evolve Electrical and Evolve Mechanical from Evolve. Evolve has temporarily extended Pinnacle's licenses while attempting to work out issues with Pinnacle in this case.

27. Pinnacle maintained one active license to Evolve Mechanical from December 2022 to June 2025. On information and belief, Pinnacle used this license not for legitimate business use, but to continue monitoring Evolve's product updates, features, and functionality in order to copy them into Pinnacle's competing PiVDC software.

28. In November 2025, Evolve became aware that Pinnacle was commercially marketing its own electrical and mechanical Revit plugin as part of PiVDC.

29. Evolve reviewed Pinnacle's PiVDC software and identified several of Evolve's own RFA files that Pinnacle was distributing as part of the PiVDC software without Evolve's consent.

30.    Based on this, Evolve executives met with Bimal Patwari, the CEO of Pinnacle on November 20, 2025.  In addition to protecting its own intellectual property, Evolve was concerned about Pinnacle's customers that use Evolve software, and Evolve therefore has been open to a scenario in which Pinnacle can remain an Evolve customer when it is time to renew its licenses.

31.    In the meeting, Mr. Patwari stated that "**I have seen every single line of code**" in the Pinnacle plugins, "**and Pinnacle does everything with integrity**."  He then pounded his own chest and exclaimed "**we [Pinnacle] are going to swallow you [Evolve]**!"  The meeting did not result in any agreement between the Parties.

32.    Mr. Patwari's statements demonstrate Pinnacle's knowledge of and intent to misappropriate Evolve's intellectual property.

33.    Despite Mr. Patwari's threats, Evolve sent a cease-and-desist letter to Mr. Patwari later that day on November 20, 2025, outlining its allegations.

## Pinnacle's Unlawful Conduct

34.    Despite being bound by Evolve's EULA, Pinnacle has unlawfully copied Evolve's Software, resulting in contractual breach and multiple violations of Evolve's intellectual property rights.

35.    Pinnacle developed and marketed competing software plugins called "Pi-Electrical" and "Pi-Mechanical," which are now merged into a single offering

called PiVDC (these are referred to collectively as the "Pinnacle Plugins"). The Pinnacle Plugins directly compete with Evolve's eVolve Electrical and eVolve Mechanical products.

36. Pinnacle created the Pinnacle Plugins by copying and reverse engineering parameters from Evolve's Revit Family ("RFA") files and unlawfully reverse engineering numerous other features of Evolve's software.

37. As alleged above, Pinnacle kept one Evolve Mechanical license for purposes of reverse engineering Evolve's features.

38. On information and belief, Pinnacle began developing the Pinnacle Plugins while it was an active licensee of Evolve's software, using its licensed access to study, analyze, and reverse engineer Evolve's proprietary technology. Pinnacle's development team had direct access to Evolve's Software and RFA files, which served as the template for Pinnacle's competing products.

39. In several instances, the Pinnacle Plugins contain identical UI layouts, RFA parameters, and workflows copied from Evolve.  In some instances, this includes exact copies of RFA files that Pinnacle has unlawfully supplied to its customers.

**Pinnacle's Copying of Evolve's RFA Files**

40.    Evolve has identified multiple conduit- and sleeve-related RFA files distributed by Pinnacle as part of the Pinnacle Plugins that are verbatim or near-verbatim copies of Evolve's own proprietary RFA files.

41.    These RFA files contain Evolve's protected parameter structures, value schemas, internal attribute configurations, and custom mappings and data-selection arrangements.  The RFA parameters copied by Pinnacle include unique descriptions and parameter combinations authored and conceived originally by Evolve.  In some cases, Pinnacle has copied only some of the parameters and has created a derivative work.  In other cases, Pinnacle has copied Evolve's RFA files wholesale without any changes.

42.    Pinnacle's copying includes parameters and graphics associated with Evolve's Smart Bend RFA files.  A side-by-side comparison of Evolve's and Pinnacle's bend parameters reveals that Pinnacle copied the exact parameter names, types, and configurations from Evolve's files.

43.    Exhibit 1, pages 1 and 2, shows a side-by-side comparison of example RFA parameters between PiVDC and Evolve's plugin, showing Pinnacle copied Evolve's names of several parameters.

44.    Pinnacle has also copied Evolve's Sleeve RFA files.  File hash comparisons confirm that Pinnacle has been illicitly utilizing and distributing exact copies

of Evolve's copyrighted RFA files.  Pinnacle added an "eE_" prefix to many of these copied parameters, designating use with their electrical offering.

45.  A file hash comparison is presented on page 2 of Exhibit 1.  Each line of the same color has an identical hash value, meaning Pinnacle was supplying Evolve's identical RFA file as part of its PiVDC offering.

46.  Evolve's copyright registration No. TX 9-541-791 covers bend parameters identified in its letter of November 20, 2025.   Evolve Sleeve RFA compilation, Registration No. TX 9-543-701, covers the specific RFA files identified by Evolve to Pinnacle via email on November 28, shown in the hash comparison of Exhibit 1.

47.  In an email sent to Evolve on November 21, 2025, Ramesh Venkataraman of Pinnacle stated that "Pinnacle does not ship any Revit ITM content with its tools."   This was a false statement made by Mr. Venkataraman with knowledge of its falsity.

48.  Other Pinnacle employees have stated that their product uses a single installer. Because Pinnacle distributes all RFA files through a unified installer package, every installation or update delivered to customers results in distribution of infringing Evolve content, multiplying Pinnacle's infringement liability on a per-copy basis.

49.    Evolve verified that all Pinnacle Plugins ship with RFA files used in Pinnacle's electrical offering.  Many of those RFA files were exact copies of Evolve's RFA files.  Others used various parameters from Evolve's RFA files.

**Pinnacle's Reproduction of Evolve's Patented Features**

50.    The Pinnacle Plugins practice numerous claims in several of Evolve's issued U.S. patents.  Evolve's patents cover core functional enhancements to Autodesk Revit, including parameter synchronization, element alignment, auto-dimensioning, spool sheet generation, and customized bend generation. *See* Exhibits P01-P11.

51.    Pinnacle had full access to Evolve's patented technology by virtue of its licenses, and Evolve's EULA, which Pinnacle expressly accepted, provides an itemized list of Evolve's issued patents.  The EULA further prohibits reverse engineering, the creation of derivative works, and recreation of any patented features.

52.    The Pinnacle Plugins reproduce the same workflows, UI structures, parameter logic, and API-driven operations protected by Evolve's patents, including parameter synchronization, multi-element alignment, automatic dimensioning, spool sheet generation, bend creation, and assembly management.

**Notice to Pinnacle and Impact on Licenses**

53.  On November 20, 2025, Evolve's counsel sent a cease-and-desist letter to Pinnacle demanding that Pinnacle immediately cease and desist from using, selling, and licensing the Pinnacle Plugins, and notifying Pinnacle of the immediate termination of Pinnacle's license to use Evolve's software due to Pinnacle's material breach of the EULA.

54.  A true and correct copy of Evolve's November 20, 2025 cease and desist letter is attached hereto as Exhibit 4 and incorporated herein by reference.

55.  On December 5, 2025, Evolve's counsel sent a supplemental notice letter to Pinnacle providing additional details regarding Pinnacle's copyright and patent infringement, including identification of specific copyrighted RFA files and patented features that Pinnacle has infringed.

56.  The December 5, 2025 letter expressly placed Pinnacle on notice that all infringement is now willful as a matter of law.

57.  A true and correct copy of Evolve's December 5, 2025 supplemental notice letter is attached hereto as Exhibit 5 and incorporated herein by reference.

58.  Despite receiving these notices, Pinnacle has failed to cease its infringing activities and EULA breaches.

59.  In an email sent to Evolve on November 21, 2025, Pinnacle did agree to "pause new sales of the PiVDC suite to Electrical and Mechanical contractors

in North America and India as long as good faith discussions are underway between the parties to resolve the issues raised by you in the cease and desist letter delivered to us on 11/20."

60. As part of those discussions, Evolve has extended Pinnacle's licenses two times for one month each.

61. Pinnacle also temporarily removed the electrical and mechanical offerings from its website and agreed to stop distributing Evolve's exact RFA files to customers of PiVDC. However, PiVDC does still utilize RFA values that Pinnacle copied from Evolve, and all of the infringing software features remain intact.

## IV.    EVOLVE'S PATENTS

62. Evolve is the assignee of all right, title, and interest in U.S. patents relevant to this action, including all rights to enforce and prosecute actions for infringement. *See* Exhibits P01-P11.

63. Each of Evolve's asserted patents was duly examined and issued by the USPTO, carries a statutory presumption of validity under 35 U.S.C. § 282, and is directed to specific technical improvements to computer-aided design software. During prosecution, the USPTO examined several of these patents under 35 U.S.C. § 101 for patent-eligible subject matter. In every such instance, the Examiner was persuaded that the claims are directed to patent-

eligible subject matter and withdrew the rejection. The remaining asserted patents were never rejected under Section 101, reflecting the examiners' determination that the claims were clearly eligible on their face. Additional details regarding the Section 101 prosecution history of specific patents are set forth below.

**Parameter Synchronization Patent**

64.     U.S. Patent No. 11,556,679 (the "'679 Patent"), titled "Modifying Elements in a Computer-Aided Design Application Using Enhanced Selection Filtering," was filed as U.S. Patent App. No. 17/395,263 on August 5, 2021. The '679 Patent is valid and enforceable.

65.     A true and correct copy of the '679 Patent is attached hereto as Exhibit P01 and incorporated herein by reference.

66.     The '679 Patent covers parameter synchronization functionality within a CAD application. Claim 1 recites, among other things, generating an element modification window within a GUI, receiving criteria for a filter based on a parameter, operator, and operand, receiving a selection of an action to perform on elements meeting the criteria (including setting a parameter value, executing a macro, or setting a work set parameter), identifying elements that fit the filter criteria, and performing the selected action via an API call.

67.    During prosecution, the USPTO examined the '679 Patent under 35 U.S.C.
§ 101 and initially rejected the claims.  In response, Applicant amended the
claims to specify that a plugin executed by a physical processor generates the
element modification window, receives filter criteria and action selections,
and makes API calls to the CAD application.  The Examiner found that the
amended claims reflect an improved computer process for modifying
elements across a CAD design layout through plugin-driven API calls, and
that the claims cannot practically be performed in the human mind and that
constitutes a specific technical improvement to CAD software.  The Examiner
withdrew the Section 101 rejection and issued a Notice of Allowance on
September 14, 2022.

**Element Alignment Patents**

68.    U.S. Patent No. 11,922,592 (the "'592 Patent"), titled "Element Alignment
for Hangers in Computer-Aided Design," was filed as U.S. Patent App. No.
17/461,781 on August 30, 2021.  The '592 Patent is valid and enforceable.

69.    A true and correct copy of the '592 Patent is attached hereto as Exhibit P02
and incorporated herein by reference.

70.    U.S. Patent No. 12,347,058 (the "'058 Patent"), titled "Element Alignment
for Hangers in Computer-Aided Design," was filed as U.S. Patent App. No.

18/595,380 on March 3, 2024.  The '058 Patent covers related element alignment subject matter to the '592 Patent.

71.    A true and correct copy of the '058 Patent is attached hereto as Exhibit P03 and incorporated herein by reference.

72.    U.S. Patent No. 11,107,295 (the "'295 Patent"), titled "Element Alignment for Hangers in Computer-Aided Design," was filed as U.S. Patent App. No. 17/003,935 on August 26, 2020.  The '295 Patent is the parent to the '592 Patent, which is the parent to the '058 Patent.

73.    A true and correct copy of the '295 Patent is attached hereto as Exhibit P04 and incorporated herein by reference.

74.    The '295 Patent, the '592 Patent, and the '058 Patent are collectively referred to as the Element Alignment Patents.

75.    The Element Alignment Patents cover functionality for aligning conduit, ductwork, and plumbing within Revit.  As a representative example, Claim 8 of the '592 Patent recites, among other things, receiving a selection of an anchor element (pipe, conduit, or duct), receiving a selection of multiple elements to align with the anchor element, and visually aligning the elements based on the anchor element including defining an alignment plane, aligning elements in parallel, and automatically providing spacing.

**Auto-dimensioning Patents**

76.    U.S. Patent No. 11,361,427 (the "'427 Patent"), titled "Auto-Dimensioning Revit Models," was filed as U.S. Patent App. No. 17/157,361 on January 25, 2021. The '427 Patent is valid and enforceable.

77.    A true and correct copy of the '427 Patent is attached hereto as Exhibit P05 and incorporated herein by reference.

78.    U.S. Patent No. 10,902,580 (the "'580 Patent"), titled "Auto-Dimensioning Revit Models," was filed as U.S. Patent App. No. 16/853,332 on April 20, 2020. The '580 Patent is valid and enforceable.

79.    A true and correct copy of the '580 Patent is attached hereto as Exhibit P06 and incorporated herein by reference.

80.    Together, the '580 Patent and the '427 Patent are referred to as the Auto-dimensioning Patents.

81.    The Auto-dimensioning Patents cover functionality for automatically dimensioning part assemblies in Revit.  As a representative example, claim 1 of the '427 Patent recites, among other things, receiving an identifier of a part assembly, determining a dimensioning rule based on the part identifier and assembly type, dynamically selecting reference points, calculating a dimension, and displaying the dimension outside the part assembly boundary.

**Spool Sheet Generation Patents**

82.   U.S. Patent No. 11,928,392 (the "'392 Patent"), titled "Spool Sheet
      Generation," was filed as U.S. Patent App. No. 17/665,034 on February 4,
      2022.  The '392 Patent is valid and enforceable.

83.   A true and correct copy of the '392 Patent is attached hereto as Exhibit P07
      and incorporated herein by reference.

84.   U.S. Patent No. 11,244,084 (the "'084 Patent"), titled "Spool Sheet
      Generation," was filed as U.S. Patent App. No. 16/853,382 on April 20, 2020.
      The '084 Patent is valid and enforceable.

85.   A true and correct copy of the '084 Patent is attached hereto as Exhibit P08
      and incorporated herein by reference.

86.   Together, the '392 Patent and '084 Patent are referred to as the Spool Sheet
      Generation Patents.

87.   The Spool Sheet generation Patents cover functionality for generating spool
      sheets in Revit.  As a representative example, claim 1 of the '392 Patent
      recites, among other things, receiving a selection of an assembly, determining
      a list of components, and displaying a spool page organized as specified by a
      spool template including a printable spool sheet region and multiple draggable
      views of the assembly at different angles outside the printable region.

**Kick Bend Patent**

88. U.S. Patent No. 10,331,820 (the "'820 Patent"), titled "Custom Fabrication From Generic Revit Templates," was filed as U.S. Patent App. No. 15/907,235 on February 27, 2018.  The '820 Patent is valid and enforceable.

89. A true and correct copy of the '820 Patent is attached hereto as Exhibit P09 and incorporated herein by reference.

90. The '820 Patent is referred to herein as the "Kick Bend Patent."

91. The Kick Bend Patent covers functionality for creating custom bend components in Revit.  Claim 1 recites, among other things, receiving a command that initiates a conversion module, determining the length and orientation of system components, calculating an imaginary intersection point between pipes, and identifying a kick as a custom component based on the length and attributes of the selected components.

92. During prosecution, the USPTO examined the '820 Patent under 35 U.S.C. § 101.  The Examiner was persuaded that the claims recite a specific improvement to the graphical user interface of a CAD application—automating the identification of custom kick components based on calculated intersection points and displaying a single custom component in place of multiple generic system components—and withdrew the Section 101 rejection.

93.    To overcome the Section 101 rejection, Applicant specifically argued *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.* (Fed. Cir. 2018), in which the Federal Circuit held that claims reciting "a specific manner of displaying a limited set of information to the user" constitute patent-eligible improvements to user interfaces.  Applicant argued that displaying a single kick custom component in place of multiple generic system components is analogous.

94.    Applicant further argued, citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), that the claims improve the way a computer retrieves and displays CAD custom component data, analogous to the improved data storage and retrieval structure found patent-eligible in *Enfish*.  The Examiner was persuaded that the claims recite a specific improvement to the graphical user interface of a CAD application and withdrew the Section 101 rejection.

95.    The '820 Patent also overcame rejections under 35 U.S.C. §§ 102 and 103 based on prior art references.   The Examiner found that the specific combination of calculating an imaginary intersection point between pipes, determining pipe lengths based on that intersection point, comparing a maximum kick length against those pipe lengths, and displaying a single kick custom component in place of multiple system components was neither anticipated nor obvious over the cited references.

**Assembly Parameter Management Patents**

96.  U.S. Patent No. 10,318,661 (the "'661 Patent"), titled "Managing Custom Revit Inheritance-Based Assembly Families for Manufacturing," was filed as U.S. Patent App. No. 15/375,369 on December 12, 2016.  The '661 Patent is valid and enforceable.

97.  A true and correct copy of the '661 Patent is attached hereto as Exhibit P10 and incorporated herein by reference.

98.  U.S. Patent No. 11,544,420 (the "'420 Patent"), titled "Managing Custom Computer-Aided Design Inheritance-Based Assembly Families for Manufacturing," was filed as U.S. Patent App. No. 16/436,394 on June 10, 2019.  The '420 Patent is valid and enforceable.

99.  A true and correct copy of the '420 Patent is attached hereto as Exhibit P11 and incorporated herein by reference.

100.  Together, the '661 Patent and '420 Patent are referred to as the Assembly Parameter Management Patents.

101.  The Assembly Parameter Management Patents cover functionality for managing parameter values in nested assembly families within Revit.  As a representative example, claim 1 of the '661 Patent recites, among other things, a non-transitory computer-readable medium storing a nested collection of assembly families including a host family, child family, and sub-child families

that inherit parameters, generating a custom dialog for a part assembly based on the host family with selection options for assigning permissible parameter values, wherein the custom dialog prevents a user from selecting parameter values that will not work with the assembly, and displaying the part assembly on the GUI.

102.   During prosecution, the '661 Patent underwent rigorous examination under 35 U.S.C. § 101 over the course of multiple Office Actions spanning more than two years.  Applicant demonstrated that the claims recite two specific improvements to the computer itself: (1) a nested collection of assembly families that reduces the storage space required for fabrication-level CAD assemblies, and (2) a custom dialog graphical user interface that dynamically changes for each assembly, presents only permissible parameter values, and prevents users from selecting invalid configurations.  The Examiner found these arguments persuasive and withdrew the Section 101 rejection, issuing the '661 Patent on June 5, 2018.  The '420 Patent, as a continuation of the '661 Patent, claims related subject matter that is likewise directed to specific technical improvements.

103.   As asserted during prosecution, the claims recite two interlocking technical solutions: the nested storage structure (storage efficiency) and the custom

25

dialog that "acts as an intermediate layer" between the user and the parameters, dynamically changing for each assembly.

104.    Applicant also added explicit GUI recitations and cited *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.* (Fed. Cir. 2018), arguing the custom dialog provides "a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic GUI on a computer," and that the claims "recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices."

105.    Applicant further cited *Trading Technologies Int'l, Inc. v. CQG, Inc.* (Fed. Cir. 2017), noting those claims were directed to a GUI that prevents order entry, analogous to the '661 Patent's custom dialog that prevents the user from entering invalid parameter values.

106.    In multiple rounds of argument, Applicant cited *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), in which the Federal Circuit held that claims to a self-referential database constituted an improvement in how a computer stores and retrieves data in memory in combination with a specific data structure, and were therefore not directed to an abstract idea. Applicant drew a direct parallel: the '661 Patent specification states that "[t]he nested family structure allows for creating more assemblies while using less storage

26

space and processing power on a computing device."  Applicant also invoked *Enfish* for the broader principle that a Section 101 analysis must be grounded in the actual claim language rather than "the type of 'high level of abstraction untethered from the language of the claim' that the USPTO guidance cautions against."  Because the claims recite two interlocking technical improvements (the nested storage structure for storage efficiency and the dynamic custom dialog for usability) rather than any abstract idea recognized by the courts, the Examiner found these arguments persuasive and withdrew the Section 101 rejection.

## V.    PINNACLE'S INFRINGING PRODUCTS

107.  The Pinnacle Plugins, particularly PiVDC, perform the claimed functionality of the identified Evolve patents.  The following are representative examples of infringement identified through Evolve's investigation:

**Parameter Synchronization Patent Infringement**

108.  Pinnacle's PiVDC plugin provides parameter synchronization functionality that practices claims of the '679 Patent.  The Pinnacle Plugins include a user interface for selecting elements based on filter criteria and synchronizing parameter values, which corresponds to the claimed elements of the '679 Patent.

109.  As a representative example, claim 1 of the '679 Patent is mapped to Pinnacle's PiVDC functionality on pages 1 and 2 of Exhibit 2.

**Element Alignment Patents Infringement**

110.  Pinnacle's PiVDC plugin includes a "Multi Align" feature that practices claims of the Element Alignment Patents.  The Multi Align feature allows users to select an anchor element, select multiple elements to align, and automatically align and space the elements, which corresponds to the claimed elements of the Element Alignment Patents.

111.  Pinnacle's "Space" function of the PiVDC plugin also appears to practice claims related to automatic spacing of elements.

112.  As a representative example, claim 1 of the '592 Patent is mapped to Pinnacle's PiVDC functionality on pages 3 and 4 of Exhibit 2.  Claim 1 of the '058 Patent and claim 1 of the '295 Patent are similarly infringed.

**Auto-dimensioning Patent Infringement**

113.  Pinnacle's PiVDC plugin includes a "Nearest Grid Dimensioning" feature that practices claims of the Auto-dimensioning Patents.  The feature automatically determines dimensioning rules based on assembly type and displays dimensions outside the part assembly boundary.

114.   As a representative example, claim 1 of the '427 Patent is mapped to Pinnacle's PiVDC functionality on pages 5 and 6 of Exhibit 2. Claim 1 of the '580 Patent is similarly infringed.

## Spool Sheet Generation Patent Infringement

115.   Pinnacle's PiVDC plugin includes an "Automatic Generating Spool Sheet" feature that practices claims of the Spool Sheet Generation Patents.   The feature displays a spool page with a printable region and multiple draggable views of assemblies at different angles, corresponding to the claimed elements.

116.   As a representative example, claim 1 of the '392 Patent is mapped to Pinnacle's PiVDC functionality on pages 7 and 8 of Exhibit 2. Claim 1 of the '084 Patent is similarly infringed.

## Kick Bend Patent Infringement

117.   Pinnacle's "Kick By Selection" function practices claims of the '820 Patent. The feature calculates intersection points and identifies kick components based on system component lengths and attributes.

118.   As a representative example, claim 1 of the '820 Patent is mapped to Pinnacle's PiVDC functionality on page 9 of Exhibit 2.

**Assembly Parameter Management Patents**

119.  Pinnacle's PiVDC plugin includes an assembly configuration feature that practices claims of the Assembly Parameter Management Patents.  The feature provides a custom dialog interface that allows users to select permissible parameter values for nested assembly families, preventing selection of parameter values that will not work with the assembly, which corresponds to the claimed elements of the Assembly Parameter Management Patents.

120.  Pinnacle's assembly parameter inheritance functionality in the PiVDC plugin also appears to practice claims related to managing parameters across host, child, and sub-child families.

121.  As a representative example, claim 1 of the '661 Patent is mapped to Pinnacle's PiVDC functionality on page 10 of Exhibit 2.  Claim 1 of the '420 Patent is similarly infringed.

## VI.   NOTICE OF INFRINGEMENT

122.  Pinnacle was on notice of Evolve's patents when it accepted Evolve's EULA, which includes an itemized list of Evolve's issued patents and expressly prohibits recreating or copying patented features.

123.  Additionally, Evolve's counsel sent cease and desist letters to Pinnacle on November 20, 2025, and December 5, 2025, which identified Evolve's issued patents, the Pinnacle Plugins, and detailed examples of infringement.

124.   Pinnacle acknowledged receipt of Evolve's letters.

125.   Therefore, Pinnacle has had notice of Evolve's patents and its infringement since at least the date it accepted Evolve's EULA, and has received express written notice no later than November 20, 2025.

126.   On information and belief, Pinnacle is unaware of any legal or factual basis that its actions do not constitute direct and indirect infringement of Evolve's patents.  To date, Pinnacle has not produced any opinion of counsel relating to the scope, interpretation, construction, enforceability, or infringement of any claim of Evolve's patents.

127.   Pinnacle's actions of misappropriating Evolve's software and RFA files in order to replicate functionality in the Pinnacle Plugins show an objectively high risk of infringement of Evolve's patents, which were duly issued by the United States Patent and Trademark Office and are presumed valid.

128.   Pinnacle's CEO, Mr. Patwari, stated that he had "seen every single line of code" in the Pinnacle Plugins, demonstrating Pinnacle's intimate familiarity with the infringing functionality.  Pinnacle developed the Pinnacle Plugins while an active licensee of Evolve's software, with direct access to and knowledge of Evolve's patented features.  Pinnacle's conduct demonstrates a deliberate and intentional decision to copy Evolve's technology rather than develop its own independent solutions.

# VII. CAUSES OF ACTION

## CLAIM I — BREACH OF CONTRACT

129. Evolve incorporates by reference all previous allegations as though set forth fully herein.

130. A claim for breach of contract requires (1) a valid contract, (2) a breach of its material terms, and (3) damages arising therefrom.

131. Pinnacle entered into a valid and binding contract with Evolve by accepting and agreeing to Evolve's EULA and Business Agreement as a condition of its license to use Evolve's software.

132. Pinnacle breached the EULA and Business Agreement by, among other things: (a) reverse engineering Evolve's Software in violation of the EULA's express prohibition; (b) creating derivative works based on Evolve's Software; (c) copying Evolve's Software and RFA files; (d) recreating Evolve's patented features; and (e) removing or obscuring data tags and proprietary information.

133. Pinnacle further breached the agreements by developing and marketing the Pinnacle Plugins, which incorporate Evolve's copyrighted RFA files and patented functionality, in direct and wrongful competition with Evolve.

134.  Evolve has incurred significant monetary damages as a result of Pinnacle's breaches, including direct and consequential damages, lost profits, and diminished market value.

135.  Evolve has suffered and will continue to suffer irreparable harm as a result of Pinnacle's conduct.  Pinnacle's ongoing infringement and misappropriation directly competes with Evolve's products in the same market, causing loss of customer relationships, market share, and goodwill that cannot be adequately compensated by monetary damages alone.  The continued availability of the Pinnacle Plugins undermines Evolve's competitive position and threatens to erode the value of Evolve's intellectual property portfolio.  Absent injunctive relief, Evolve will suffer continuing and irreparable injury for which there is no adequate remedy at law.

## CLAIM II — FEDERAL DEFEND TRADE SECRETS ACT

136.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

137.  Federal law provides a private right of action for a claim of misappropriation of trade secrets where (1) a party owns trade secrets used in interstate commerce, (2) a third party misappropriates those trade secrets, and (3) damages arise therefrom. 18 U.S.C. § 1836.

138.   Evolve owns valid and valuable proprietary trade secrets in the form of its Software, RFA files, source code, and proprietary information therein, which it uses in interstate commerce.

139.   Pinnacle intentionally and flagrantly misappropriated Evolve's trade secrets by improperly decompiling and reverse engineering Evolve's RFA files and software and unlawfully replicating the contents for Pinnacle's own benefit in the Pinnacle Plugins.

140.   Evolve has incurred significant monetary damages as a result of Pinnacle's misappropriation, including direct and consequential damages.  Furthermore, Evolve is entitled to damages for Pinnacle's unjust enrichment and is entitled to exemplary damages because Pinnacle's misappropriation was made in bad faith, willfully, and maliciously.

## CLAIM III — MISAPPROPRIATION OF TRADE SECRETS (GEORGIA LAW)

141.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

142.   A claim for misappropriation of trade secrets under Georgia law requires a party to prove (1) it had a trade secret, (2) a third party misappropriates that trade secret by improper means, and (3) damages arise therefrom. O.C.G.A. § 10-1-760.

143. Evolve owns valid and valuable proprietary trade secrets in the form of its Software, RFA files, and the proprietary information therein.

144. Pinnacle intentionally and flagrantly misappropriated Evolve's trade secrets by improperly decompiling the RFA files and Software and unlawfully replicating the contents for its own benefit.

145. Evolve has incurred significant monetary damages as a result of Pinnacle's misappropriation, including direct and consequential damages, and is entitled to exemplary damages and injunctive relief.

## CLAIM IV — COMPUTER THEFT AND TRESPASS (GEORGIA COMPUTER SYSTEMS PROTECTION ACT)

146. Evolve incorporates by reference all previous allegations as though set forth fully herein.

147. Georgia law provides a private right of action for claims of computer theft and computer trespass where (1) a party uses a computer or computer network with knowledge that such use is without authority, (2) such party takes or appropriates the property of another or converts property in violation of an agreement or other known legal obligation, and (3) damages arise therefrom. O.C.G.A. § 16-9-93.

148.   Pinnacle used computers and computer networks to access Evolve's Software with knowledge that its reverse engineering and copying activities were without authority and in violation of the EULA.

149.   Pinnacle took and appropriated Evolve's property, including its RFA files (both complete files and individual values from those files) and Software functionality, and converted such property in violation of Georgia law, the EULA, and Pinnacle's known legal obligations.

150.   Evolve has incurred significant monetary damages as a result of Pinnacle's computer theft and trespass.

## CLAIM V — COPYRIGHT INFRINGEMENT

151.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

152.   Federal copyright law provides a right of action for claims of copyright infringement where (1) a party owns a valid copyright, (2) evidence exists that a third party made an unauthorized copy of the copyrighted material or otherwise violated the exclusive rights of copyright, and (3) damages arise therefrom. 17 U.S.C. § 501.

153.   Evolve owns valid copyrights in its RFA files, including Registration No. TX 9-541-791 (Ex. CP01, Evolve Conduit Bend RFA compilation) and Registration No. TX 9-543-701 (Ex. CP02, Evolve Sleeve RFA compilation).

154.    Pinnacle violated Evolve's exclusive rights under 17 U.S.C. §§ 106(1), 106(2), and 106(3) by: (a) reproducing Evolve's copyrighted RFA files; (b) creating derivative works based on Evolve's RFA files; and (c) distributing copies of Evolve's RFA files to Pinnacle's customers through the Pinnacle Plugins installer.

155.    Pinnacle's copying and redistribution of Evolve's copyrighted works constitutes willful copyright infringement under 17 U.S.C. §§ 501 and 504(c)(2).  Pinnacle had access to these works only by virtue of its license to Evolve's software and was expressly prohibited from copying.

156.    On information and belief, Pinnacle licensed Evolve Mechanical for the sole purpose of accessing and copying features from Evolve Mechanical.

157.    This is a pattern of behavior by Pinnacle.  For example, Pinnacle's features "Connect Align", "Draw Down", "Draw Left", "Draw Right", "Attach Straight", among others, are derived from features in Symetri's Naviate MEP and Naviate LT software.  On information and belief, the PiVDC features identified in Exhibit 6 correspond to Naviate functionality.  *See* Exhibit 6.

158.    Because Pinnacle distributes all RFA files through a unified installer package, every installation or update delivered to customers results in distribution of infringing Evolve content, multiplying Pinnacle's infringement liability.

159.   Evolve has suffered significant damages from Pinnacle's infringement, including lost profits and is entitled to statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement.

## CLAIM VI — DIRECT PATENT INFRINGEMENT OF THE '679 PATENT

160.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

161.   Pinnacle has infringed and continues to infringe one or more claims of the '679 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the parameter synchronization functionality covered by the '679 Patent.

162.   Pinnacle's infringing acts are without license or authorization from Evolve.

163.   Pinnacle had notice of the '679 Patent and its infringement since at least acceptance of Evolve's EULA, and received express written notice on December 5, 2025. Pinnacle's infringement is therefore willful.

164.   As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM VII — INDIRECT PATENT INFRINGEMENT OF THE '679 PATENT

165.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

166.  Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '679 Patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '679 Patent, and with the specific intent that such others infringe the '679 Patent. Pinnacle accomplishes such inducement by directing and instructing others to install, use, and operate the Pinnacle Plugins within Revit, including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

167.  Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '679 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '679 Patent and not suitable for any substantial non-infringing use.

168.  Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM VIII — DIRECT PATENT INFRINGEMENT OF THE '592 PATENT

169.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

170.  Pinnacle has infringed and continues to infringe one or more claims of the '592 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the element alignment functionality covered by the '592 Patent.

171.  Pinnacle's infringing acts are without license or authorization from Evolve.

172.  Pinnacle had notice of the '592 Patent and its infringement since at least acceptance of Evolve's EULA, and received express written notice on December 5, 2025.  Pinnacle's infringement is therefore willful.

173.  As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM IX — INDIRECT PATENT INFRINGEMENT OF THE '592 PATENT

174.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

175.  Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '592 Patent under 35 U.S.C. § 271(b) by knowingly,

intentionally, and actively aiding and abetting others to infringe the '592 Patent, including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

176. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '592 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '592 Patent and not suitable for any substantial non-infringing use.

177. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM X — DIRECT PATENT INFRINGEMENT OF THE '427 PATENT

178. Evolve incorporates by reference all previous allegations as though set forth fully herein.

179. Pinnacle has infringed and continues to infringe one or more claims of the '427 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the auto-dimensioning functionality covered by the '427 Patent.

180. Pinnacle's infringing acts are without license or authorization from Evolve.

181.   Pinnacle had notice of the '427 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

182.   As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XI — INDIRECT PATENT INFRINGEMENT OF THE '427 PATENT

183.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

184.   Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '427 Patent under 35 U.S.C. § 271(b) , including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

185.   Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '427 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '427 Patent and not suitable for any substantial non-infringing use.

186.   Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XII — DIRECT PATENT INFRINGEMENT OF THE '392 PATENT

187. Evolve incorporates by reference all previous allegations as though set forth fully herein.

188. Pinnacle has infringed and continues to infringe one or more claims of the '392 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the spool sheet generation functionality covered by the '392 Patent.

189. Pinnacle's infringing acts are without license or authorization from Evolve.

190. Pinnacle had notice of the '392 Patent and its infringement since at least acceptance of Evolve's EULA. Pinnacle's infringement is therefore willful.

191. As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XIII — INDIRECT PATENT INFRINGEMENT OF THE '392 PATENT

192. Evolve incorporates by reference all previous allegations as though set forth fully herein.

193. Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '392 Patent under 35 U.S.C. § 271(b) , including through user

manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

194. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '392 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '392 Patent and not suitable for any substantial non-infringing use.

195. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XIV — DIRECT PATENT INFRINGEMENT OF THE '820 PATENT

196. Evolve incorporates by reference all previous allegations as though set forth fully herein.

197. Pinnacle has infringed and continues to infringe one or more claims of the '820 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the kick bend functionality covered by the '820 Patent.

198. Pinnacle's infringing acts are without license or authorization from Evolve.

199. Pinnacle had notice of the '820 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

200.  As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XV — INDIRECT PATENT INFRINGEMENT OF THE '820 PATENT

201.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

202.  Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '820 Patent under 35 U.S.C. § 271(b), including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

203.  Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '820 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '820 Patent and not suitable for any substantial non-infringing use.

204.  Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XVI — DIRECT PATENT INFRINGEMENT OF THE '580 PATENT

205.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

206.  Pinnacle has infringed and continues to infringe one or more claims of the '580 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the auto-dimensioning functionality covered by the '580 Patent.

207.  Pinnacle's infringing acts are without license or authorization from Evolve.

208.  Pinnacle had notice of the '580 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

209.  As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XVII — INDIRECT PATENT INFRINGEMENT OF THE '580 PATENT

210.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

211.  Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '580 Patent under 35 U.S.C. § 271(b), including through user

manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

212. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '580 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '580 Patent and not suitable for any substantial non-infringing use.

213. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XVIII — DIRECT PATENT INFRINGEMENT OF THE '084 PATENT

214. Evolve incorporates by reference all previous allegations as though set forth fully herein.

215. Pinnacle has infringed and continues to infringe one or more claims of the '084 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the spool sheet generation functionality covered by the '084 Patent.

216. Pinnacle's infringing acts are without license or authorization from Evolve.

217. Pinnacle had notice of the '084 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

47

218. As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XIX — INDIRECT PATENT INFRINGEMENT OF THE '084 PATENT

219. Evolve incorporates by reference all previous allegations as though set forth fully herein.

220. Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '084 Patent under 35 U.S.C. § 271(b), including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

221. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '084 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '084 Patent and not suitable for any substantial non-infringing use.

222. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XX — DIRECT PATENT INFRINGEMENT OF THE '058 PATENT

223.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

224.   Pinnacle has infringed and continues to infringe one or more claims of the '058 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the element alignment functionality covered by the '058 Patent.

225.   Pinnacle's infringing acts are without license or authorization from Evolve.

226.   Pinnacle had notice of the '058 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

227.   As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XXI — INDIRECT PATENT INFRINGEMENT OF THE '058 PATENT

228.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

229.   Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '058 Patent under 35 U.S.C. § 271(b), including through user

49

manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

230. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '058 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '058 Patent and not suitable for any substantial non-infringing use.

231. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XXII — DIRECT PATENT INFRINGEMENT OF THE '295 PATENT

232. Evolve incorporates by reference all previous allegations as though set forth fully herein.

233. Pinnacle has infringed and continues to infringe one or more claims of the '295 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the element alignment functionality covered by the '295 Patent.

234. Pinnacle's infringing acts are without license or authorization from Evolve.

235. Pinnacle had notice of the '295 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

236. As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XXIII — INDIRECT PATENT INFRINGEMENT OF THE '295 PATENT

237. Evolve incorporates by reference all previous allegations as though set forth fully herein.

238. Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '295 Patent under 35 U.S.C. § 271(b), including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

239. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '295 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '295 Patent and not suitable for any substantial non-infringing use.

240. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XXIV — DIRECT PATENT INFRINGEMENT OF THE '661 PATENT

241.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

242.  Pinnacle has infringed and continues to infringe one or more claims of the '661 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the assembly parameter management functionality covered by the '661 Patent.

243.  Pinnacle's infringing acts are without license or authorization from Evolve.

244.  Pinnacle had notice of the '661 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

245.  As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XXV — INDIRECT PATENT INFRINGEMENT OF THE '661 PATENT

246.  Evolve incorporates by reference all previous allegations as though set forth fully herein.

247.  Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '661 Patent under 35 U.S.C. § 271(b), including through user

manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

248. Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '661 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '661 Patent and not suitable for any substantial non-infringing use.

249. Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XXVI — DIRECT PATENT INFRINGEMENT OF THE '420 PATENT

250. Evolve incorporates by reference all previous allegations as though set forth fully herein.

251. Pinnacle has infringed and continues to infringe one or more claims of the '420 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States the Pinnacle Plugins that practice the assembly parameter management functionality covered by the '420 Patent.

252. Pinnacle's infringing acts are without license or authorization from Evolve.

253. Pinnacle had notice of the '420 Patent and its infringement since at least acceptance of Evolve's EULA.  Pinnacle's infringement is therefore willful.

254.   As a direct and proximate result of Pinnacle's infringement, Evolve has suffered injury for which it is entitled to damages under 35 U.S.C. § 284, as well as enhanced damages for willful infringement.

## CLAIM XXVII — INDIRECT PATENT INFRINGEMENT OF THE '420 PATENT

255.   Evolve incorporates by reference all previous allegations as though set forth fully herein.

256.   Induced Infringement: Pinnacle has induced others to infringe one or more claims of the '420 Patent under 35 U.S.C. § 271(b), including through user manuals, tutorials, marketing materials, technical support, and training that specifically instruct users to perform the infringing functionality.

257.   Contributory Infringement: Pinnacle has contributed to the infringement of one or more claims of the '420 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing the Pinnacle Plugins knowing them to be especially made or adapted for use in infringement of the '420 Patent and not suitable for any substantial non-infringing use.

258.   Pinnacle's induced and contributory infringement is willful, and this case is exceptional under 35 U.S.C. § 285.

## CLAIM XXVIII — CONVERSION

259. Evolve incorporates by reference all previous allegations as though set forth fully herein.

260. Georgia law provides a right of action for claims of conversion where there is (1) ownership or the right to certain property, including software, (2) an unauthorized appropriation or use of the property by a third party, and (3) deprivation of the owner's right to the property. O.C.G.A. § 51-10-1.

261. Evolve owns the Software and selectively licenses the Software on restrictive and protective terms as set out in the EULA.

262. Pinnacle misappropriated the Software by decompiling the Software and RFA files and taking them for Pinnacle's own use in the Pinnacle Plugins.

263. Evolve was deprived of the benefits of the Software's exclusive ownership by Pinnacle's conversion.

264. Evolve has incurred significant monetary damages as a result of Pinnacle's actions and is entitled to damages for Pinnacle's unjust enrichment.

# VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff eVolve MEP, LLC respectfully requests that this Court enter:

A.    A judgment in favor of Plaintiff Evolve that Pinnacle breached the parties' agreements, including the EULA and Business Agreement; misappropriated Evolve's trade secrets; committed actionable computer theft and trespass; and infringed Evolve's copyrights and patents;

B.    A judgment and order requiring Pinnacle to pay Evolve its damages, costs, expenses, attorneys' fees, an award for the unjust enrichment that Pinnacle obtained by its wrongful actions, exemplary damages, and prejudgment and post-judgment interest;

C.    Preliminary and permanent injunctive relief to prevent Pinnacle from making any further use or deriving any further benefit from Evolve's trade secrets, copyrighted material, and patents, and to require Pinnacle to cease all sale, licensing, marketing, distribution, installation, or use of the Pinnacle Plugins;

D.    A judgment that Pinnacle has infringed one or more claims of the '679 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

E.      A judgment that Pinnacle has infringed one or more claims of the '592 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

F.      A judgment that Pinnacle has infringed one or more claims of the '427 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

G.      A judgment that Pinnacle has infringed one or more claims of the '392 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

H.      A judgment that Pinnacle has infringed one or more claims of the '820 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

I.      A judgment that Pinnacle has infringed one or more claims of the '580 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

J.      A judgment that Pinnacle has infringed one or more claims of the '084 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

K.    A judgment that Pinnacle has infringed one or more claims of the '058 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

L.    A judgment that Pinnacle has infringed one or more claims of the '295 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

M.    A judgment that Pinnacle has infringed one or more claims of the '661 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

N.    A judgment that Pinnacle has infringed one or more claims of the '420 Patent directly (either literally and/or under the doctrine of equivalents) and indirectly;

O.    An award of all damages to which Evolve is entitled under 35 U.S.C. § 284 for all past and continuing patent infringement, including but not limited to reasonable royalties, and an order requiring a full accounting of the same;

P.    An award of enhanced damages in accordance with the provisions of 35 U.S.C. § 284 as a result of Pinnacle's knowing and willful patent infringement;

Q.    An award of statutory damages for willful copyright infringement under 17 U.S.C. § 504(c)(2);

R.    A finding that this case is exceptional under 35 U.S.C. § 285 and an award of all attorneys' fees incurred by Evolve in this action;

S.    An assessment of interest, both pre- and post-judgment, on the damages awarded;

T.    An award of costs incurred by Evolve in bringing and prosecuting this action; and

U.    Any and all other relief as this Court may deem just and proper.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), Evolve hereby demands a trial by jury of any issues so triable by right.


Dated: February 16, 2026                Respectfully submitted,


/s/ Brannon McKay
Brannon C. McKay
Georgia Bar Number 558603
Josh Clayton
Georgia Bar Number 506481
CLAYTON, MCKAY & BAILEY, PC
800 Battery Avenue SE, Suite 300
Atlanta, GA 30339
Tel. 713.410.6217
josh@cmblaw.com
brannon@cmblaw.com

Cortney S. Alexander
KENT & RISLEY LLC
5755 N Point Pkwy Ste. 57

Alpharetta, GA 30022
Telephone: (404) 855-3867
Facsimile: (770) 462-3299
cortneyalexander@kentrisley.com

*Counsel for Plaintiff eVolve MEP, LLC*